UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| KEVIN A. TOMSHACK,<br><br>    Plaintiff,<br><br>vs.<br><br>ROBERT WILKIE, Secretary, UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,<br><br>    Defendant. | 4:20-CV-4037<br><br><br><br>**COMPLAINT** |

For his Complaint against the Defendant, the Plaintiff states as follows:

## INTRODUCTION

This is an action for damages based upon the Defendant's discrimination against Plaintiff due to Plaintiff's disabilities in violation of the Americans with Disabilities Act ("ADA") of 1990, as amended, the ADA Amendments Act of 2008 ("ADAA") and the Rehabilitation Act of 1973, as amended, and due to Defendant's retaliation against Plaintiff because of Plaintiff engaging in protected activity.

## PARTIES

1.  Plaintiff is an individual who resides in Sioux Falls, South Dakota, and has maintained as his primary residence the Sioux Falls residence during all of the times relevant to this Complaint.

2.  The Defendant, Robert Wilkie, is the Secretary of the United States Department of Veterans Affairs ("VA"), a federal agency organized under the laws of the United States with its principal executive office located at 810 Vermont Avenue, N.W., Washington, D.C.

3. Among the many institutions maintained and operated by the VA is the Royal C. Johnson Veterans Memorial Hospital, also known as the Sioux Falls VA Medical Center ("SFVAMC").

## JURISDICTION

4. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331, and 38 U.S.C. § 4323(b)(3).

5. This case has been pending with the Department of Veterans Affairs, Office of Resolution Management since January 11, 2018, at the latest. No resolution has been made, as shown by paragraphs 26-37, below. Therefore, this Court has jurisdiction pursuant to 42 U.S.C. § 2000e-16(c).

## VENUE

6. Venue in the District of South Dakota, Southern Division, is proper because the Plaintiff resides there, the Defendant has substantial contacts there, and the events underlying this Complaint substantially occurred there. 28 U.S.C. § 1391(b); 38 U.S.C. § 4323(b)(3).

## FACTS

7. Plaintiff was employed as a medical support assistant at the SFVAMC. Plaintiff was a GS-6, at the time of his termination.

8. Lisa Seeley was Plaintiff's immediate supervisor at SFVAMC.

9. Diane Machien was Plaintiff's second-level supervisor at SFVAMC.

10. Darwin Goodspeed was Director of SFVMAC during the relevant time period of the Complaint.

11. Plaintiff has numerous medical disabilities related to his military service, a 26-year career in the Air Force, including lengthy deployments in Kuwait, ten miles from the Iraq

2

border and at Manas Air Force Base, Kyrgyzstan. Plaintiff's disabilities were known to his supervisors. He had a 90% disability at the time his employment at SFVAMC was terminated, including a four-level cervical fusion, as well as lower back issues, which make it impossible for him to sit, stand, or walk for any length of time. He also had chronic pain, PTSD, depression and degenerative joint and disk disease, at the time his employment was terminated. Now, Plaintiff's disability is 100%.

12. Plaintiff began his employment at SFVMAC in 2012, working as a janitor. Plaintiff started working for the Care in the Community division of SFVAMC in May, 2015 as a scanner. At that time, management was aware of his various disabilities. There was a backlog of thousands of documents which needed to be scanned. Plaintiff substantially reduced the backlog.

13. Once Plaintiff caught up with the scanning, Lisa Seeley asked him to start doing consult tracking, which was a task assigned to medical support assistants. In September, 2015, Plaintiff was actually hired into the position of medical support assistant (sometimes called program support assistant).

14. The task of consult tracking includes tabulating the number of necessary medical appointments for veterans which have not been scheduled. These are called "open consults". Plaintiff drastically reduced the number of open consults.

15. Plaintiff was authorized by Lisa Seeley to work a part-time schedule in a full-time position, due to his disabilities, for approximately two years, as an accommodation, since August, 2015, following his second cervical fusion.

16. While working in this position, Plaintiff received promotions, cash bonuses and written awards. The unit was evaluated favorably, due, in substantial part, to Plaintiff's performance.

17. Plaintiff's November 10, 2016 Performance Appraisal by Lisa Seeley included five "exceptional" ratings, and one "highly successful" rating, including, in part:

> 1. Customer Service: Kevin demonstrates exemplary skills in all aspects of customer service. He goes extra lengths to secure documentation when needed in a timely manner.
> . . . .
> 2. Teamwork: Kevin is able to work with all members of the department, the Medical Center, and with our community partners. He takes pride and ownership of the scanning role in the department which reflects well on the department and the Medical Center. He was a vital contributor to the improvement in our consult completion metric for this fiscal year which improved from the 30th percentile to the 100th percentile by the end of the fiscal year.
> . . . .
> 3. Personal Mastery: Kevin is always punctual, is independent and effective in managing his very high workload.
> . . . .
> 4. Technical Skills: Kevin is the subject matter expert for scanning or medical documentation and Biscom fax in the department. During the rating period he was used by the Business Office to train HIM staff in scanning.
> . . . .
> 5. Productivity: Kevin works accurately and thoroughly on every document that he scans. He is self directed in managing the voluminous scanning workload and is quick to identify and resolve any barriers to completing the work.
> . . . .
> 6. Quality: Kevin works accurately and timely in the area of consult completion. He has single-handedly been responsible for monitoring the Choice DOMA portal and pulling down documents from the portal and inserting into CPRS.

The only variation in this exceptional evaluation was the "highly successful" rating in "Personal Mastery", due to "Unfortunately he has had four documented episodes of unplanned leave for medical reasons during this rating period."

18. Plaintiff's main job was consult tracking, which involves making sure that veterans' records are kept up-to-date and they are receiving the correct care in a timely fashion.

4

This resulted in Plaintiff making entries into patients' electronic medical records which logged veterans not receiving care in a timely basis. This alerted doctors, nurses and schedulers about veterans not receiving timely medical appointments and medical care. Over time, Plaintiff's actions caused doctors', nurses' and schedulers' actions to be questioned, and Plaintiff's presence and activities were resented.

19. Under the guise of a new position assignment, SFVAMC management sought to revoke Plaintiff's accommodation. First, Plaintiff was made a GS-6 on February 5, 2017. This was labelled a "Promotion" but this was essentially a pay raise. His grade was changed from GS-5 to GS-6; he had to be a GS-5 for at least one year, which was increased to GS-6 due to his performance. His duties remained substantially the same. He had already been engaged in assigned scheduling duties, among other duties, but also continued to conduct consult tracking after this date.

20. In the summer of 2017, Plaintiff was told he must complete scheduler training. Lisa Seeley told Plaintiff that the method of their unit's evaluation was being changed. The unit had previously been evaluated by the reductions in the numbers of open consults. This was being changed to an evaluation according to the number of appointments which were scheduled.

21. The training sessions were scheduled for three 8-hour days. Plaintiff told Lisa Seeley he would do the training, but, for four hours per day, because of his disabilities. Seely insisted Plaintiff must attend training sessions which lasted eight hours per day. Plaintiff did not refuse to attend the training; he advised the supervisor he would attend the training sessions for four hours per day. She responded "that's not the way it works." Thereafter, Plaintiff continued to work his four-hour schedule. Plaintiff was also told that after completing the training, he would have to work eight hours per day.

22. Plaintiff proposed a .5 FTE assignment, to share a full time position, as an accommodation, with another employee who had expressed an interest in being a .5 FTE employee. On October 3, 2017, this request was summarily rejected, in writing, without management engaging in any interactive process. The Denial of Accommodation Request was stated to be for two reasons: (a) "The accommodation would require removal of an essential function of the job;" and (b) "the accommodation would require lowering of a performance or production standard." Both were false, and a pretext for Plaintiff's termination.

23. When Plaintiff resisted the revocation of his previous accommodation, he was given a very negative November 6, 2017 evaluation, and a November 17, 2017 Notice of Deficiencies, which were a pretext for Plaintiff's termination. Then Plaintiff was told he must resign, or he would be fired.

24. Plaintiff's response to the "resign or be fired" ultimatum was:

> I have been working a part time schedule for approximately 2 years. During that period, my main duties, as directed by my supervisor, Lia Seely, has been consult tracking. This has resulted in decreasing wait times for veteran scheduling from in excess of 1 year to less than 90 days. During this previous year I have both received an exceptional performance review as well as a cash bonus for my work. I have no desire to leave the VA because I believe I have truly helped veterans to receive the care that they deserve. While I was instrumental in achieving my departments goals in this metric, I have been informed that this metric is no longer a concern. Therefore I was asked to retrain or resign. I am unable to retrain, due to the fact that I am unable to work 8 hrs per days due to my service connected disability. I regret that I am forced to resign immediately. I will stop on 11/24/17 to remove my personal effects from my work area, during normal business hours.

25. Plaintiff was told he must give up his accommodation or he would be terminated. He repeatedly responded that he could not do that, due to his disability. On November 23, 2017, Plaintiff was terminated. This adverse employment action was a constructive discharge.

## THE EEO INVESTIGATIONS

26. On January 2, 2018, Plaintiff submitted his Complaint of Discrimination, which stated his first contact with the EEO office was on November 24, 2017, and that the most recent incident of discrimination occurred on November 23, 2017.

27. On December 16, 2017, the agency EEO Counselor, Curtis X. Smith, issued to Plaintiff a letter summarizing the sequence of Plaintiff's allegations, and management's responses. It also stated:

> The Notice of Right to File a Discrimination Complaint and VA Form 4939 were sent via UPS to the Aggrieved on December 28, 2017, and delivered on December 30, 2017.

28. On January 27, 2018, the VA Office of Resolution Management sent to Plaintiff a letter acknowledging his Complaint of Discrimination and that it was officially filed January 11, 2018, and stating the amount of time to complete the investigation would be 180 days from the original Complaint.

29. On February 23, 2018, the VA Office of Resolution Management sent a letter to Plaintiff accepting two claims:

> Claim A: Whether complainant was discriminated against based on disability, when on October 3, 2017, he was denied a reasonable accommodation.
>
> Claim B: Whether complainant was discriminated against based on disability when effective November 23, 2017, he was forced to resign from employment.

Claim B states a retaliation claim.

30. In August, 2018, Plaintiff was interviewed by Charles Kolliker, investigator, which resulted in a 4-page affidavit dated August 27, 2018.

31. The Report of Investigation (ROI) was submitted September 11, 2018.

32. On October 5, 2018, Plaintiff submitted a Request for Final Agency Action (FAD). Having not received the FAD, due within 60 days of the request, on February 26, 2019, Plaintiff's counsel inquired about it in writing. On March 5, 2019, the agency replied the FAD was expected to be issued by March 31, 2019. On May 1, 2019, Plaintiff's counsel submitted another inquiry.

33. On May 9, 2019, the VA Office of Employment Discrimination Complaint Adjudication re-opened the investigation and sent a letter to Plaintiff informing him of that on May 14, 2019.

34. On June 5, 2019, Charles Kolliker took a telephone deposition of Plaintiff.

35. The supplemental ROI was sent to Plaintiff on July 30, 2019.

36. On September 20, 2019, the VA Office of Resolution Management requested the VA Office of Employment Discrimination Complaint Adjudication to complete a FAD.

37. As of the date of this Complaint, no FAD has been completed, so the EEOC proceeding has not even commenced more than two years after the Complaint of Discrimination was submitted.

### FIRST CAUSE OF ACTION
### RETALIATION FOR PROTECTED ACTIVITY

38. Plaintiff re-alleges Paragraphs 1 – 37 as though set out in full.

39. A request for an accommodation is a protected activity. Plaintiff engaged in this protected activity throughout the last two years of his employment at SFVAMC. When Plaintiff reminded management that he had been given an accommodation regarding his schedule due to his disability, that was also a protected activity.

40. Plaintiff had a good faith belief that his requested accommodation was appropriate. He was terminated almost immediately for seeking to continue his accommodation.

8

41. Plaintiff engaged in a protected activity by requesting a reasonable accommodation to work in a department that would not cause him stress to avoid triggering a seizure. At the time of his hiring, Plaintiff had also engaged in protected activity by filing an EEO complaint.

42. Defendant engaged in unlawful conduct by terminating Plaintiff when it refused to make a reasonable accommodation for Plaintiff on the basis of his disability.

43. There was a causal connection between Plaintiff's protected activity and the employer's adverse action. Defendant's termination of Plaintiff was substantially motivated by and in retaliation for Plaintiff's request to continue his reasonable accommodation. There was temporal proximity between Plaintiff's protected activity and the termination of his employment.

44. As a result of Defendant's conduct, Plaintiff was subjected to unlawful retaliation for having engaged in protected activity as set forth above. The reasons given for the termination were a pretext for the retaliation.

45. As a direct and proximate result of the adverse employment action by Defendant, because Plaintiff had engaged in the protected activity to seeking to continue his reasonable accommodation, Plaintiff has been damaged by his loss of income, loss of benefits, and anxiety and emotional distress, as more fully described in paragraphs 55-57, below.

## SECOND CAUSE OF ACTION
## DISCRIMINATION ON THE BASIS OF DISABILITY

46. Plaintiff re-alleges paragraphs 1 – 45 as though set out in full.

47. Plaintiff was an individual with a disability within the meaning of the ADAA; Plaintiff was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and the SFVAMC treated Plaintiff differently than similarly situated

non-disabled employees and failed to provide Plaintiff with a needed accommodation. 29 C.F.R. § 1630.2(g)-(1); 1630.4; 1630.9.

48. An agency has an obligation to provide a reasonable accommodation requested by an employee with disabilities and the failure to provide such accommodation constitutes a violation each time the employee needs it.

49. Defendant has discriminated against Plaintiff in violation of the ADA and ADAA by failing to accommodate him due to his disability and unlawfully terminating his employment due to his disability in violation of Title 1 of the ADA, 42 U.S.C. § 12112(a) and (b).

50. Defendant had an affirmative obligation to engage Plaintiff in the interactive process to determine how he could continue to perform the essential functions of his job with or without a reasonable accommodation, which Defendant failed to do. Defendant refused to do this on multiple occasions.

51. Other similarly situated employees, who did not have Plaintiff's disabilities, were given as much or more leeway with their work schedules, and were not terminated.

52. The effect of the practices complained of above has deprived Plaintiff of equal employment opportunities and has adversely affected his status as an employee because of disability, in violation of Title 1 of the ADA, 42 U.S.C. § 12112(a) and (b).

53. The unlawful employment practices complained of above were intentional.

54. The unlawful employment practices complained of above were done with malice and/or reckless indifference to the federally protected rights of Plaintiff.

55. As a direct and proximate result of Defendant's discriminatory conduct based upon disability, Plaintiff has sustained economic and emotional damages as describe below in paragraphs 55-57.

## DAMAGES

56.     Plaintiff is entitled to an award of back pay from the date he was terminated, until his full retirement date not before July 21, 2033. Due to his employment termination, Plaintiff has also been deprived of his benefits by his employment termination, including federal retirement benefits and a VA 401k plan.

57.     Plaintiff is entitled to be awarded money damages for the harassment, anxiety and emotional distress he experienced, as a result of the ongoing retaliation for his EEO protected activity, and as a result of the discrimination against Plaintiff because of his ADA disability.

58.     That the Defendant reimburse Plaintiff his attorney's fees and costs.

WHEREFORE, Plaintiff prays for a Judgment against Defendant for retaliation for protected activity, and for ADA discrimination, and an award of damages for:

1.      Back pay and the value of lost benefits;

2.      Severe emotional distress; and

3.      An award of attorney's fees and costs.

Dated this 25th day of February, 2020.

HAGEN, WILKA & ARCHER, LLP

By *Thomas K. Wilka*
Thomas K. Wilka
Sara E. Schroeder
600 S. Main Avenue, Suite 102
P.O. Box 964
Sioux Falls, SD  57101-0964
(605) 334-0005
Attorneys for Plaintiff

**PLAINTIFF DEMANDS A TRIAL BY JURY**

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
KEVIN A. TOMSHACK

**(b)** County of Residence of First Listed Plaintiff: Minnehaha
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
THOMAS K. WILKA, SARA E. SCHROEDER, HAGEN, WILKA & ARCHER, 600 S. MAIN AVENUE, SUITE 102, SIOUX FALLS, SD 57104

## DEFENDANTS
ROBERT WILKIE, SECRETARY, UNITED STATES DEPARTMENT OF VETERANS AFFAIRS

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/Accommodations
- [x] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**TORTS — PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**PRISONER PETITIONS — Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC Section 12112

Brief description of cause:
Discrimination in violation of ADA; retaliation

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE: _____   DOCKET NUMBER: _____

DATE: 2/25/2020

SIGNATURE OF ATTORNEY OF RECORD: *Thomas K. Wilka*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____